UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHASHI MEHROTRA,

                              Plaintiff,

v.                                                          1:24-CV-1243
                                                            (GTS/PJE)
GENERAL ELECTRIC COMPANY (GE)
also known as GE VERNOVA,

                              Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

SHASHI MEHROTRA
   Plaintiff, *Pro Se*
221 Mohawk Trail
Niskayuna, NY 12309

SEYFARTH SHAW LLP                    ALNISA BELL, ESQ.
   Counsel for Defendant
620 Eighth Avenue
New York, NY 10018-1405

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this breach-of-contract action filed by Shashi Mehrotra

("Plaintiff") against General Electric Company ("GE Company" or "Defendant"), are the

following motions: (1) Defendant's motion to dismiss the Complaint for lack of subject-matter

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); and (2) Plaintiff's motion to amend the

Complaint pursuant to Fed. R. Civ. P. 15(a).  (Dkt. Nos. 13, 22, 23.)  For the reasons set forth

below, Defendant's motion is granted, and Plaintiff's motion is denied.

## I.    RELEVANT BACKGROUND

### A.     Plaintiff's Complaint

Generally, in his Complaint, Plaintiff asserts the following two claims: (1) a claim that Defendant breached its implied covenant of good faith and fair dealing when it agreed to offer Plaintiff protected service status until June 30, 2020, but then undermined his efforts to get rehired in a new position; and (2) a claim that Defendant breached its protected service agreement with Plaintiff by denying him several job opportunities for pretextual reasons.  (Dkt. No. 1.)

### B.     Parties' Briefing on Defendant's Motion to Dismiss

#### 1.     Defendant's Memorandum of Law

Generally, in its motion to dismiss, Defendant makes three arguments.  (Dkt. No. 13, Attach. 2.)  First, Defendant argues that Plaintiff's Complaint must be dismissed for lack of subject-matter jurisdiction because his asserted claims do not arise under federal law, and the fact that he alleged that his claims are related to claims brought under the Sarbanes-Oxley Act in a separate proceeding does not create federal subject-matter jurisdiction over the claims in this action.  (*Id.* at 8-9.)

Second, Defendant argues that Plaintiff's Complaint must be dismissed for lack of subject-matter jurisdiction also because (a) there is no complete diversity of citizenship between the parties, given that both Plaintiff and Defendant GE Company are citizens of New York, and (b) Plaintiff's allegations do not establish that the matter in controversy exceeds $75,000, given that Plaintiff has not plausibly alleged the existence of any contract between the parties related to Plaintiff's claims.  (*Id.* at 9-15.)

Third, Defendant argues that allowing Plaintiff to amend the Complaint would be futile because he would be unable to remedy the above-described jurisdictional defects. (*Id.* at 15.)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant's motion, Plaintiff makes six arguments. (Dkt. No. 18.) First, Plaintiff argues that uncertainty about the name of the proper entity to sue does not justify dismissal of his Complaint because (a) Defendant's counsel was uncooperative with Plaintiff's requests for information regarding the proper entity, and (b) Plaintiff eventually chose GE Company as the defendant in order to keep the parties consistent with other actions he has filed related to the same set of facts, most notably a Sarbanes-Oxley Act action that is currently pending before the Second Circuit. (*Id.* at 4-6.)

Second, Plaintiff argues that the Court has supplemental jurisdiction over his state-law claims here because there is a substantial connection between this case and the separate Sarbanes-Oxley Act action as to both the facts and the relief sought such that, if that case were to be remanded by the Second Circuit, they should be heard together. (*Id.* at 6-7.)

Third, Plaintiff argues that Defendant's motion should be denied also on the basis of judicial estoppel because Defendant previously removed a separate lawsuit (in which Plaintiff alleged defamation against GE International) on the basis of diversity jurisdiction. (*Id.* at 7-10.)

Fourth, Plaintiff argues that Defendant's denial of the existence of a contract is unfounded because he has alleged that (a) the offering of a protected service period constitutes a contract that included an implied contractual obligation to treat the employee's rehire efforts during that period fairly, as well as an obligation to continue to afford him all employee privileges through the termination date of that protected service period, and (b) Defendant acted

3

in bad faith by offering a protected service period with no intention to actually rehire him. (*Id.* at 11-15.)

Fifth, Plaintiff argues that the scope of relief sought justifies the Court exercising supplemental jurisdiction because not only has he alleged specific damages from the alleged breach of contract, but he has also alleged that the offering of a bad-faith protected services period deprived him of the opportunity to file timely lawsuits for defamation and violations of the Sarbanes-Oxley Act. (*Id.* at 15-18.)

Sixth, Plaintiff argues that punitive damages are warranted in this case (and should be considered for the purposes of determining the amount in controversy related to jurisdiction) because he has alleged Defendant retaliated against him as a whistleblower of legal and ethical violations at GE and then prevented him from getting rehired by providing pretextual reasons and manufacturing allegations and investigations. (*Id.* at 18-21.)

### 3.    Defendant's Reply Memorandum of Law

Generally, in reply, Defendant makes two arguments. (Dkt. No. 21.) First, Defendant argues that the Complaint must be dismissed for lack of subject-matter jurisdiction because (a) Plaintiff's claims do not raise a question of federal law and the existence of a separate Sarbanes-Oxley Act action before a different court does not somehow transform the state-law claims in this action into a federal question, (b) he has not pled the existence of diversity between the parties, and (c) even if amendment of the Complaint to substitute GE Vernova as the defendant in this action were permitted to establish diversity of citizenship, Plaintiff still cannot plead diversity jurisdiction because he cannot establish that the amount in controversy exceeds $75,000. (*Id.* at 6-9.)

4

Second, Defendant argues that judicial estoppel does not apply here because the prior defamation lawsuit on which Plaintiff relies did not name GE Company as the defendant, but rather "General Electric," which Defendant's counsel interpreted to mean his direct employer, GE International, which is a Connecticut company, and therefore diversity jurisdiction was proper in that case in a way it was not here; and, indeed, that case was remanded to the state court due to lack of diversity when Plaintiff added GE Company and an individual employee as additional defendants. (*Id.* at 9-12.)

### C. Parties' Briefing on Plaintiff's Motion to Amend His Complaint

#### 1. Plaintiff's Memorandum of Law

Generally, in his motion, Plaintiff states that he is seeking to amend his Complaint to (a) replace current Defendant GE Company with the proper defendant, GE Vernova International (formerly GE International), which is a Delaware citizen, (b) "reinforce the applicability of New York State substantive law in its adjudication," and (c) add a claim of fraud based on the facts that were already alleged in the Complaint. (Dkt. No. 22, at 3.) He argues that the proposed amendments (a) clarify the proper defendant, (b) rectify the defects related to diversity of the parties, (c) will not prejudice Defendant or delay the case, and (d) will prevent Plaintiff from being unfairly precluded from pursuing the merits of valid claims due to a procedural misidentification of the proper defendant. (*Id.* at 5-6.)

#### 2. Plaintiff's "Supplement" to His Motion to Amend the Complaint

Before Defendant submitted a response to the motion to amend, Plaintiff submitted a "supplement" to that motion with a proposed "Second Amended Complaint," in which he

additionally seeks to amend his Complaint to revise the proposed cause of action for fraud and to add a cause of action for fraudulent concealment.  (Dkt. No. 23.)

### 3.     Defendant's Opposition Memorandum of Law

Generally, in its opposition to Plaintiff's motion to amend, Defendant makes two arguments.  (Dkt. No. 27.)  First, Defendant argues that the proposed amendments do not cure the defects related to subject-matter jurisdiction because (a) there is no federal question presented, (b) substituting GE Vernova for GE Company would not create complete diversity under the circumstances because Plaintiff's allegations still assert that GE Company itself conducted many of the actions underlying Plaintiff's claims, rendering it a necessary party, (c) the proposed amendments still do not show that the matter in controversy exceeds $75,000, given that (i) there can be no damages from his breach-of-contract and breach of implied covenant claims given that he has not plausibly alleged the existence of a contract that was breached and resulted in damages, and any damages for the breach of implied covenant claim would be duplicative of the contract claim, and (ii) his proposed fraud claims are also duplicative of his breach-of-contract claims and therefore cannot be aggregated to meet the jurisdictional amount. (*Id.* at 9-20.)

Second, Defendant argues that allowing Plaintiff to amend the Complaint would be futile because the proposed amendments do not cure the deficiencies regarding diversity jurisdiction. (*Id.* at 21.)

### 4.     Plaintiff's Reply Memorandum of Law

Generally, in reply, Plaintiff makes six arguments.  (Dkt. No. 28.)  First, Plaintiff argues that the proposed Amended Complaint properly substitutes GE Vernova for GE Company

because GE Company (now GE Aerospace) has nothing to do with his claims, given that it was GE International (now GE Vernova International) that was his employer and the entity responsible for the actions alleged in the Complaint.  (*Id.* at 4-6.)

Second, Plaintiff argues that, even if Defendant is correct that he has not sufficiently pled the existence of a valid contract, the addition of the non-contract claims cures that deficiency to the extent he would still have viable claims to pursue.  (*Id.* at 6.)

Third, Plaintiff argues that the addition of the fraud claims also cures any defects argued by Defendant regarding entitlement to punitive damages, inability to meet the amount in controversy, and the absence of public harm.  (*Id.* at 6-10.)

Fourth, Plaintiff argues that the proposed Amended Complaint pleads plausible fraud and fraudulent concealment causes of action that are not merely duplicative of his contract claims because they are based on acts not related to the alleged contractual obligations.  (*Id.* at 10-13.)

Fifth, Plaintiff argues that Defendant has not shown that the amendments fail to cure the jurisdictional defects because (a) their position of opposing the existence of jurisdiction is inconsistent with their position in the prior defamation case, (b) with the substitution of GE Vernova, there is now complete diversity, (c) the amount in controversy, including lost wages, meets the $75,000 threshold, (d) Defendant's characterization of his claims unfairly trivializes what he is actually alleging, and (e) Defendant has not argued persuasively that no binding, implied-in-fact agreement exists related to his contract claims.  (*Id.* at 14-15.)

Sixth, Plaintiff argues that leave to amend should be granted because Fed. R. Civ. P. 15 indicates that leave should be freely given when justice so requires, and because doing so would promote judicial economy.  (*Id.* at 15-16.)

7

## II.    GOVERNING LEGAL STANDARDS

### A.    Legal Standard Governing a Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113.  The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]).  When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

### B.    Legal Standard Governing a Motion to Amend a Pleading

A motion for leave to amend a complaint is governed by Fed. R. Civ. P. 15, which states that leave to amend should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1992).  Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be freely given "[i]n the absence of any apparent or declared reason to not grant leave to amend[,] such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment...."  *Foman*, 371 U.S. at 182; *S.S.*

8

*Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir. 1979); *Meyer v. First Franklin Loan Servs., Inc.*, 08-CV-1332, 2010 WL 277090, at *1 (N.D.N.Y. Jan. 19, 2010) (Suddaby, J.); *Jones v. McMahon*, 98-CV-0374, 2007 WL 2027910, at *10 (N.D.N.Y. July 11, 2007) (Lowe, M.J.). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss...." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 [2d Cir. 2002]).

Under Local Rule 15.1(a), "[a] party moving to amend a pleading pursuant to Fed. R. Civ. P. 14, 15, [or] 19-22 must attach an unsigned copy of the proposed amended pleading to its motion papers." N.D.N.Y. L.R. 15.1(a). "Except if the Court otherwise orders, the proposed amended pleading must be a complete pleading, which will supersede the pleading sought to be amended in all respects." *Id.* "The motion must set forth specifically the proposed insertions and deletions of language and identify the amendments in the proposed pleading, either through the submission of a redline/strikeout version of the pleading sought to be amended or through other equivalent means." *Id.*

## III.    ANALYSIS

### A.    Whether Plaintiff Has Sufficiently Established Diversity Jurisdiction

After careful consideration, the Court answers the above question in the negative for the reasons stated in Defendant's memoranda of law related to its motion to dismiss the Complaint. *See, supra,* Parts I.B.1 and 3 of this Decision and Order. To those reasons, the Court adds the following analysis (which is intended to supplement, and not supplant, Defendant's reasons).

Even when Plaintiff's *pro se* Complaint is construed with the utmost of special lenience, there has been no federal question presented by Plaintiff's claims for breach of contract and of

the implied covenant of good faith and fair dealing.  (*See generally* Dkt. No. 1.)  Furthermore, the fact that Plaintiff has filed a completely separate administrative action pursuant to a federal statute based on the same nucleus of operative facts that is currently being appealed to the Second Circuit Court of Appeals (specifically, *Mehrotra v. United States Department of Labor*, No. 23-7798, Petition for Review of an Agency Order [2d Cir. filed Nov. 14, 2023]) does not somehow manufacture a federal question in this action.[1]  Finally, it is clear that complete diversity does not exist between the parties, because both Plaintiff and Defendant GE Company are New York citizens.[2]  As a result, the Court does not have subject-matter jurisdiction to consider the merits of any of Plaintiff's claims as asserted in the Complaint.

### B.    Whether the Court Should Grant Plaintiff Leave to Amend His Complaint

After careful consideration, the Court answers the above question in the negative for the reasons stated in Defendant's memorandum of law in opposition to Plaintiff's motion to amend. *See, supra,* Part I.C.3 of this Decision and Order.  To those reasons, the Court adds the following analysis (which, again, is intended to supplement, and not supplant, Defendant's reasons).

---

[1]    Plaintiff may not confer upon this Court supplemental jurisdiction over her current state-law claims by relying the Second Circuit's original jurisdiction over *another* action.  *Cf.* 28 U.S.C. § 13678(a) ("[*I*]*n any civil action* of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.") (emphasis added).

[2]    The Court notes that, even if it were to liberally construe GE Vernova (whether it be GE Vernova Inc. or GE Vernova International) to already be a defendant in this action based on statements in the summons and Plaintiff's opposition papers, he still also clearly names—and needs—GE Company as a defendant, and thus complete diversity would not exist.

Although the Court has found that the Complaint does not establish diversity jurisdiction such that the Court cannot consider the merits of Plaintiff's claims, it does have the limited jurisdiction to consider whether his proposed Amended Complaint[3] would cure those jurisdictional defects. The two pre-requisites for subject-matter jurisdiction under 28 U.S.C. § 1332 are complete diversity of citizenship between the parties and a finding that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332(a).

As to complete diversity of citizenship, permitting Plaintiff to amend the Complaint to substitute GE Vernova for GE Company would create complete diversity between the parties. As Plaintiff asserts and Defendant appears to acknowledge, GE Vernova International is a Delaware corporation. (Dkt. No. 22, at 4; Dkt. No. 27, at 7, 10.) In an attempt to circumvent this fact, Defendant argues that Plaintiff's substitution of parties is not actually proper because the proposed Amended Complaint still primarily asserts claims against GE Company. (Dkt. No. 27, at 10-12.) Defendant's argument relies primarily on the fact that Plaintiff references "GE" as the perpetrator of the various acts alleged throughout the proposed Amended Complaint. However, Plaintiff expended great effort in order to make clear that it is GE Vernova, not GE Company, that is being implicated:

> Defendant GEII [("GE International Inc.")] was a wholly owned
> subsidiary of General Electric Company which was a conglomerate
> incorporated in the state of New York at the time of the alleged
> offenses. GEII converted to GE Vernova International LLC in

---

[3]    For the purposes of this Decision and Order, the Court refers collectively to Plaintiff's proposed First Amended Complaint (Dkt. No. 22) and his proposed Second Amended Complaint (Dkt. No. 23) as his "proposed Amended Complaint." More specifically, out of special solicitude to Plaintiff as a *pro se* litigant, the Court has liberally construed both proposed pleadings as constituting Plaintiff's proposed Amended Complaint.

> 2023.  The power business spun off General Electric Company and it is now operating as a separate company known as GE Vernova Inc.  For purposes of this Complaint, the term "GE" is used as a collective reference to the network of entities and individuals associated with the General Electric Company that were involved in managing, operating, or supporting the Power business when the alleged breaches occurred.  Regardless of the legal entities of the individuals involved in the alleged breaches described herein, their actions were undertaken in support of the Power sector and are collectively attributed to "GE" in this Complaint.  *Liability for all adverse acts lies with GEII, which has since converted to GE Vernova International LLC.*

(Dkt. No. 23, Attach. 1, at ¶ 2 [emphasis added].)  This statement, although somewhat convoluted, does sufficiently make clear that (a) the use of "GE" throughout the proposed Amended Complaint is not intended to mean GE Company, but rather the subsidiaries of GE Company that were related to the power business specifically, and (b) it was GE International that Plaintiff worked for, and GE Vernova that is now responsible for the power business on which Plaintiff once worked.  Especially construing the proposed Amended Complaint in the light most favorable to the *pro se* Plaintiff, the allegations do not lead to the conclusion that references to "GE" mean that Plaintiff is alleging that GE Company was responsible for the actions underlying his claims, especially because, as will be discussed below, GE Company no longer has any relation to the power business underlying Plaintiff's claims.  *See Basso v. Willow Run Foods, Inc.*, 577 F. Supp. 3d 73, 76 n.1 (N.D.N.Y. 2022) (Hurd, J.) ("[F]or the purposes of Rule 12(b)(1) and 12(b)(6) motions, this Court must accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from it in the light more favorable to the plaintiff.") (citing *Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 353 [2d Cir. 2020]); *accord Basil Cook Enters., Inc. v. St. Regis Mohawk Tribe*, 26 F. Supp. 2d 446, 448 (N.D.N.Y. 1998) (McAvoy, C.J.).

12

Defendant also argues that it is evident that GE Company is the real party because Plaintiff has repeatedly sued GE Company in other actions and proceedings related to the same set of facts (including his Sarbanes-Oxley Act action and defamation lawsuit). (Dkt. No. 27, at 11-12.) However, the fact that Plaintiff may have sued GE Company in those instances does not mean that GE Company is (or ever was) the proper party related to the claims asserted here. According to the parties' papers, both the Sarbanes-Oxley Act and defamation cases were dismissed on procedural (specifically, timeliness and/or statute of limitations) grounds, and it is not apparent that the propriety of GE Company's involvement in those suits was ever challenged such that a court or administrative body was required to assess that question. Although Plaintiff's briefing throughout both motions indicates that he had reasons for naming GE Company in this action (specifically to be consistent with the previous legal actions), that does not mean that Plaintiff's act of doing so was correct. Plaintiff's allegations and arguments make clear that it was GE International that was Plaintiff's employer, and that he worked for the power sector within GE. He alleges (and Defendant does not appear to dispute) that GE International has since become a new, separate entity from GE Company—GE Vernova—which took over all of the power sector business that used to be part of GE's business. He further alleges (and, again, Defendant does not appear to dispute) that GE Company has now become GE Aerospace, which does not have any involvement in the power sector. These allegations plausibly suggest that it is GE Vernova that is the successor of Plaintiff's actual employer at the time of the alleged conduct, not GE Company itself. That Plaintiff has perhaps mistakenly sued GE Company multiple times in the past does not require this Court to ignore the relevant information before it that suggests GE Vernova is the more proper defendant here.

13

Because the Court finds that the proposed Amended Complaint seeks to permissibly substitute GE Vernova International for Defendant GE Company, and because GE Vernova International is, as the parties both acknowledge, incorporated in Delaware, the proposed Amended Complaint would cure the defect regarding the absence of complete diversity among the parties.

However, as to whether the allegations of the proposed Amended Complaint would establish the minimal amount in controversy, the Court finds that they do not. "In determining defendant's challenge to the amount in controversy, the Court must apply the 'legal certainty' test," which specifies that

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

*Kauhsen v. Aventura Motors, Inc.*, 09-CV-4114, 2010 WL 2301289, at *2 (E.D.N.Y. June 7, 2010) (quoting *Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 115 [2d Cir. 2002]). "[U]nlike certain other jurisdictional determinations where the Court makes a substantive inquiry into the facts underlying jurisdiction, the Court treats the face of a complaint as a 'good faith representation of the actual amount in controversy,' establishing a presumption that the amount alleged is the actual amount in controversy." *Sarfraz v. Vohra Health Servs., PA*, 663 F. Supp. 2d 147, 149 (E.D.N.Y. 2009) (quoting *Scherer v. Equitable Life Assurance Society of U.S.*, 347 F.3d 394, 397 [2d Cir. 2003]) The good-faith nature of the plaintiff's representation of the amount in controversy is a rebuttable presumption, such that the defendant must show that "the complaint 'was so patently deficient as to reflect to a legal certainty that the plaintiff could not recover the

14

amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums.'" *Kauhsen*, 2010 WL 2301289, at \*3 (quoting *Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 [2d Cir. 2006]; citing *Ocean Ships, Inc.*, 315 F.3d at 115).

In making the determination about whether the amount in controversy is sufficient, "'affirmative defenses on the merits may not be used to whittle down the amount in controversy.'" *Sarfraz*, 663 F. Supp. 2d at 149 (quoting *Scherer*, 347 F.3d at 397). "[A] single plaintiff may aggregate multiple state law claims to satisfy the requirement." *Sarfraz*, 663 F. Supp. 2d at 150 (citing *Colavito*, 438 F.3d at 221). Further, "doubt concerning the value of relief sought by a plaintiff should be resolved in the plaintiff's favor." *Sarfraz*, 663 F. Supp. 2d at 149-50 (citing *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 [2d Cir. 1994]).

Plaintiff does not allege any specific dollar amount of damages suffered as a result of the actions underlying his claims in the proposed Amended Complaint, or even allege in a general manner that they amount to more than the jurisdictional amount. (*See generally* Dkt. No. 23, Attach. 1.) Rather, as relief, Plaintiff seeks, in pertinent part, the following: (a) compensatory damages, including damages for "lost wages, benefits, and other economic losses from October 5, 2018," as well as "damages for emotional distress, pain, and suffering," "time spent on legal research and preparing legal briefs," medical and therapy costs related to the treatment of his autoimmune disease that worsened from the stress of Defendant's actions, adjustment of his pension "to recover lost accrual and cover the cost of upgrading his long-term care from nursing home coverage to comprehensive coverage due to his stress-induced disability," and reimbursement of his legal expenses in his separate Sarbanes-Oxley Act and defamation actions; and (b) punitive damages. (Dkt. No. 23, Attach. 1, at 27-28.)

15

As an initial matter, Plaintiff's allegation that he started incurring wage- or economic-related damages on October 5, 2018, is not consistent with his other allegations that plausibly suggest his employment was not terminated until June 21, 2019. (Dkt. No. 23, Attach. 1, at ¶¶ 43-44.) Although he alleges October 5, 2018, was the date on which he reported internal misconduct to GE, he notably does not allege that any loss of wages or benefits or other damages occurred before the time of his termination. (*Id.* at ¶¶ 28-42.) Moreover, Plaintiff's claims are not related to conduct engaged in by Defendant before his termination, or even to the fact that his employment was terminated on June 21, 2019, but rather Defendant's failure to fairly consider his applications to be rehired for other positions at GE during the protected services period. As a result, any calculation or estimation of the loss of wages and benefits at issue here for the purposes of determining the amount in controversy would not be related to what he was deprived of by being terminated from his previous position, but what he was denied by not being rehired.

Moreover, the amount of such damages is incredibly speculative with the sparse information contained in the proposed Amended Complaint. Plaintiff has not provided any factual allegations plausibly suggesting the salary of any of the jobs he applied for during the protected service period, much less factual allegations suggesting that he would have been hired for one of those positions with any reasonable certainty if not for Defendant's alleged breaches or fraud. Other listed damages—such as emotional pain and suffering and medical expenses— are similarly too vaguely stated to permit the Court to estimate any sort of dollar amount attributable to those. Although genuine doubts regarding the value of alleged damages should be resolved in favor of the plaintiff, that does not relieve the plaintiff of the basic requirement to provide sufficient allegations "proving that it appears to a 'reasonable probability' that the claim

is in excess of the statutory jurisdictional amount." *Scherer*, 347 F.3d at 397 (quoting *Tongkook Am., Inc.*, 14 F.3d at 784). Although this burden is "hardly onerous," it is not non-existent, and here Plaintiff has offered nothing to even *im*plausibly suggest the amount of any of his alleged damages, much less to show that there is a reasonable probability that such amount is in excess of $75,000. *Scherer*, 347 F.3d at 397.

Further, Plaintiff's assertion of damages in the form of legal expenses in this action, as well as in his prior actions against Defendant and others, are not definite in terms of any attributable dollar value (given that Plaintiff does not allege what financial loss he incurred in conducting legal research and preparing legal briefs); and, although Plaintiff alleges that Defendant's conduct led to his prior actions being dismissed on untimeliness grounds because of their withholding of information, there is simply nothing in the proposed Amended Complaint that would plausibly suggest that Plaintiff would never have filed those actions if Defendant had not engaged in the relevant activity. Rather, he merely alleges that those actions would have been decided on their merits rather than procedural grounds because he would have filed them sooner. If Plaintiff would have engaged in those actions regardless of Defendant's other alleged conduct, then the costs associated with his own choice to pursue legal action can hardly be attributable to Defendant's alleged breaches and fraud. He also, again, offers no factual allegations plausibly suggesting what types of expenses or amounts were incurred in that respect.

Granted, Plaintiff does also assert entitlement to punitive damages. However, "a court has the duty to look behind a claim for punitive damages to see whether, on the facts pleaded, such damages reasonably could be awarded under applicable law, and to disregard groundless punitive damages claims." *Dry Clean Depot of Am., Inc. v. Stock*, 1992 WL 395526, at *1

(S.D.N.Y. Dec. 28, 1992) (citing *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1033-34 n.1 [2d Cir. 1972]).  Here, as Defendant argues, Plaintiff's proposed Amended Complaint does not allege facts plausibly suggesting that the conduct causing Plaintiff's injury was part of a pattern of conduct also directed at the public generally (as is required to plead entitlement to punitive damages related to Plaintiff's claims).  *See Welch v. Bio-Reference Labs., Inc.*, 23-CV-0664, 2024 WL 1672234, at *2 (N.D.N.Y. Apr. 18, 2024) (Sannes, C.J.) (citing *Bracken v. MH Pillars Inc.*, 290 F. Supp. 3d 258, 266 [S.D.N.Y. 2017]); *Zicherman v. State Farm Fire and Casualty Co.*, 698 F. Supp. 3d 564, 571 (E.D.N.Y. 2023); *see also Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613 (N.Y. 1994) (noting that punitive damages are not recoverable for an ordinary breach of contract, but "where the breach of contract also involves a fraud evincing a 'high degree of moral turpitude' and demonstrating 'such wanton dishonesty as to imply a criminal indifference to civil obligations,' punitive damages are recoverable if the conduct was 'aimed at the public generally'").

Although Plaintiff alleges that GE senior executives were engaged in compliance violations that he attempted to expose and that such actions caused him to have his employment terminated, such facts do not form the basis of his claims; this is not a Sarbanes-Oxley Act action.  Instead, Plaintiff has alleged that (a) Defendant breached both an implied contract and the implied covenant of good faith and fair dealing by granting him a protected services period while secretly having no intent to rehire him, and (b) Defendants engaged in fraud and fraudulent concealment, not related to compliance violations, but rather by falsely telling him there was no adverse information being used against him in his job applications, manufacturing falsehoods about his previous job performance and accomplishments to prevent him from being rehired,

fabricating pretextual reasons for not rehiring him for various positions, and concealing information regarding its decision not to rehire him, the supposedly adverse information about him, and the pretextual reasons for denying his applications, and "sanitizing" information in an investigation report to prevent independent directors from intervening in his efforts to get rehired. (Dkt. No. 23, Attach. 1.) This conduct does not appear to impact the public in any way, because all these alleged actions deal merely with Plaintiff's ability to be rehired. As a result, Plaintiff would not be able to show, based on the allegations, that he would be entitled to punitive damages, and therefore such alleged damages should not be included in the accounting of determining the matter in controversy.

In sum, Plaintiff's proposed Amended Complaint fails to offer sufficient information from which it can be extrapolated, even providing Plaintiff with the utmost benefit of the doubt, that the amount in controversy reaches the threshold required to establish diversity jurisdiction under 28 U.S.C. § 1332. Because the proposed amendments would therefore not cure the deficiencies in the original Complaint regarding the failure to establish diversity jurisdiction, the Court denies the motion to amend the Complaint on the basis that amendment would be futile, and dismisses the Complaint without prejudice for lack of subject-matter jurisdiction.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to dismiss for lack of subject-matter jurisdiction (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion to amend his Complaint (Dkt. Nos. 22 and 23) is **DENIED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is <u>**DISMISSED**</u> **without prejudice** <u>to refiling in state court (within the applicable limitations period)</u> for lack of subject-matter jurisdiction.

Dated: July 25, 2025
       Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

20